UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOSHUA HUGO,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )      No.: 3:12-CV-167-TAV-HBG
                                      )
MILLENNIUM LABORATORIES, INC.,        )
                                      )
            Defendant.                )


## MEMORANDUM OPINION

Plaintiff has brought this action against his former employer claiming that Millennium discharged him (1) in retaliation for reporting or refusing to participate in illegal activities in violation of Tennessee common law and the Tennessee Public Protection Act; (2) to prevent him from appearing at a deposition in an unrelated Colorado lawsuit in violation of public policy; and (3) because of his age in violation of the Tennessee Human Rights Act. This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 31]. Plaintiff has responded [Doc. 40]. The Court has carefully considered the motion and, for the reasons stated herein, finds that defendant's motion for summary judgment should be granted.

I.     **Background**

Millennium provides healthcare professionals with medication monitoring services, clinical tools, scientific data, and education, helping to personalize treatment plans to improve clinical outcomes and patient safety. Millennium utilizes technology

and proprietary methodologies to provide medication monitoring and drug detecting results via both urine drug testing and oral fluid testing. Millennium promotes and sells its products and services directly to physician practices through a nationwide network of highly-trained sales professionals [Doc. 42-1].

Plaintiff was hired by Millennium in September 2010 as a Senior Sales Specialist assigned to a territory that included East Tennessee. As a Senior Sales Specialist, plaintiff was responsible for growing sample volumes in his assigned territory through ongoing account management and development of new customer accounts. At the time he was hired, plaintiff was over forty years old. Plaintiff received and signed a Code of Conduct that included Millennium's Compliance Policy Manual, and received training on compliance throughout his employment. Plaintiff was paid a base salary formulated on his experience, plus commissions that were based on the number of urine and oral specimens generated for testing. Plaintiff was supported in his sales efforts by Customer Support Specialist ("CSS") Brian Arnold. *Id.*

A CSS works with and below a Senior Sales Specialist. The CSS is responsible for scheduling and conducting customer in-service training for new accounts, ongoing customer education, as well as service and support of existing customers in a designated geographic territory. The CSS also helps the Sales Specialist develop new sales leads and open new accounts. Although Arnold did not report directly to plaintiff, he was primarily responsible for finding leads for plaintiff to pursue and then servicing existing accounts in plaintiff's territory. As a Senior Sales Specialist, plaintiff had direct

2

supervisory authority over several Laboratory Services Assistants ("LSA's"). An LSA is a Millennium employee assigned to work at a customer location to assist in tasks specifically related to the provision of Millennium's testing services, primarily packaging and shipping patient urine samples to Millennium for testing. *Id.* As a Senior Sales Specialist, plaintiff was responsible for monitoring the LSA's assigned to accounts in his territory and ensuring that those LSA's complied with Millennium policy and state and federal laws regarding the scope of the LSA's work and the potential for illegal inducement [Doc. 51].

Millennium's LSA policy strictly prohibits LSA's from performing tasks unrelated to Millennium's laboratory services. Compliance with this policy is critical in the drug testing industry because the provision of services that do not directly relate to laboratory services could be seen as an illegal inducement in violation of state and federal anti-kickback laws. To minimize the risk that a physician practice might ask an LSA to perform tasks in violation of law or company policy, Millennium requires all accounts that are provided with an LSA to sign an agreement acknowledging the proper scope of the LSA's duties and responsibilities [Doc. 42-1].

Plaintiff states that Millennium did not enforce this policy at all times. Plaintiff was informed by at least one LSA that Arnold instructed the LSA to perform tasks outside the scope of the LSA's employment when plaintiff was not around. Plaintiff further states that at least one LSA threatened to sue defendant because Arnold, in spite of plaintiff's instructions to the contrary, was directing the LSA to perform tasks not

3

permitted under the law. Plaintiff states that Arnold admitted that during his employment with defendant, LSA's were performing tasks such as marking specimens and calling back patients which are unrelated to defendant's laboratory services. *Id.* Arnold was terminated by Millennium In October 2012, after it determined that Arnold had allowed improper LSA activity to happen. *Id.*

At all times during his employment with Millennium, plaintiff reported to Regional Sales Manager Jarrett Smith. *Id.* Several months after plaintiff was hired, Smith started receiving complaints from customers and co-workers about plaintiff's job performance. Specifically, Smith was informed by Arnold and others that plaintiff showed poor organizational skills, failed to appear for appointments on time, got lost on his way to meetings with customer accounts, and failed to complete paperwork and expense reports in a timely manner. These reports concerned Smith because providing customer service is a fundamental requirement of each and every Senior Sales Specialist. Plaintiff admits that Arnold communicated with Smith about plaintiff's job performance, but disputes that Smith ever talked to plaintiff about Arnold's complaints. Plaintiff states that he only became aware of the complaints after his termination. Plaintiff admits that Smith discussed with plaintiff at least one incident in which plaintiff was late to an appointment with an account. *Id.*

In April 2011, Smith received several emails from a Millennium customer complaining that plaintiff lacked product knowledge, stayed in the customer's office too long "chatting," and caused other administrative difficulties. On June 9, 2011, the office

manager of another Millennium account in plaintiff's territory asked Smith if their office could be serviced by Arnold instead of plaintiff because of the difficulties she was having with plaintiff. On August 8, 2011, that same account complained again that plaintiff arrived over an hour and a half late for a meeting and showed a lack of professionalism. That same day, Smith also received internal emails from other Millennium employees complaining about plaintiff's work habits, customer service, timeliness, and failure to complete administrative tasks necessary for his job. *Id.*

Plaintiff was on vacation the week of August 8, 2011, when he received a phone call from one of his LSA's, Logan Norman. Norman reported that he had been asked by a customer to perform certain tasks that were illegal and against Millennium's policies, including cleaning bathrooms and picking up cigarette butts. Plaintiff states that the day he returned from his vacation, a second LSA, Jennifer Caldwell, contacted him and said that she had been asked by a customer to file medical records, which would have violated Millennium's policies and the LSA agreement that Millennium requires its customers to sign. Plaintiff mentioned to Smith that he "heard about Norman." Smith responded that he was aware of the situation and had already handled it (Norman was terminated by Smith before plaintiff returned from vacation). Plaintiff also informed Arnold, who was below plaintiff in the organizational structure, of his conversations with Norman and Caldwell and told Arnold that if it continued they would have to take it up with the customer. *Id.* Plaintiff states that after he was terminated, he was informed by a third LSA, James White, that Arnold was telling the LSA's under plaintiff's supervision to "do

whatever the client wants you to do, but when Josh comes by, follow the rules." Plaintiff never reported his conversation with White to anyone at Millennium [Doc. 51].

Under Millennium's Code of Conduct and Compliance Policy, plaintiff was required to report any suspect or illegal activity to his direct supervisor or to the Company's compliance officer. Defendant states that plaintiff never made any complaint or report to anyone at Millennium about the alleged requests that were made to the LSA's. Plaintiff responds that he attempted to report the requests to Smith, who refused to engage in further discussion with plaintiff. Plaintiff states he also discussed the requests with Arnold. Plaintiff admits that during his employment at Millennium, he never reported any violation by anyone at Millennium of any law or regulation governing clinical laboratories to the company compliance officer or to any outside agency. *Id.*

On August 16, 2011, Smith spoke with plaintiff about his having missed a scheduled customer visit the week before plaintiff's vacation. Smith believed that plaintiff lied to him about the time he arrived for the meeting because plaintiff's statement to Smith was contradicted by a text message that plaintiff had sent to Arnold, and which Arnold shared with Smith. Plaintiff denies that he lied to Smith about missing the appointment. *Id.*

On August 25, 2011, Smith decided to terminate plaintiff based on the multiple complaints he had received from customers and other employees as well as plaintiff's dishonesty during their discussion about the missed customer visit. Before the termination could be carried out, Smith received an email from plaintiff resigning his

6

position effective September 2, 2011. Smith testified that at no time during his employment, did plaintiff ever report to him that he had been asked to engage in or facilitate any violation of a law, rule, or regulation governing drug testing companies or any company policy. Smith further stated that plaintiff never reported to him that he was aware that anyone else at Millennium had engaged in any violation of the law or company policy.

Plaintiff denies that Smith based his decision on the complaints from customers and co-workers; instead, plaintiff states that Smith decided to terminate him based on his attempt to report illegal LSA activity, plaintiff's potential testimony in the Colorado litigation, and/or his age. *Id.*

Defendant states that Smith was never aware of plaintiff's age at any time during his employment, and that Smith has recommended termination of other Sales Specialists both under and over 40 years of age for performance reasons. Plaintiff responds that his birth date was included on his "New Hire Information Sheet" which was part of his personnel file. Plaintiff states that Smith would be aware of his age based on his participation in hiring plaintiff and his role as plaintiff's director supervisor. *Id.* Plaintiff believes that one of the reasons he was terminated was that Millennium could pay Arnold a lower base salary as his replacement because Arnold had less experience in the industry due to his age. *Id.*

In October 2010, Millennium filed a lawsuit in Colorado against certain competitors for copyright infringement and related tort claims arising from the copying of

7

Millennium's drug test requisition forms. Colorado was not in plaintiff's territory at any time during his employment. In August 2011, one of the competitor defendants, a company called Forensic, sought leave to file a counterclaim in the Colorado lawsuit alleging that Millennium's sales agents had displayed a stipulated temporary restraining order that had been reached in that case to customers in an attempt to gain a competitive advantage over Forensic. Forensic informed Millennium that plaintiff was one of several Millennium employees it wished to depose. *Id.*

After plaintiff's employment with Millennium ended, Millennium informed counsel for Forensic that it no longer employed plaintiff, and therefore, plaintiff's deposition would need to be procured through the issuance of a subpoena. Plaintiff was served with a subpoena at his home and he contacted the Forensic attorney who issued that subpoena. Forensic's lawyer did not inform plaintiff what subjects would be covered in his deposition. Prior to the scheduled date for his deposition, plaintiff received a call from Millennium's in-house legal counsel, Martin Price, in which Price offered to answer any questions or to provide plaintiff with counsel for the deposition even though he was no longer employed by Millennium. *Id.*

Defendant states that at the time of his termination, no one at Millennium was aware of the questions plaintiff would have been asked at the deposition, or what he would have said in response, or that he had even spoken to a lawyer. Plaintiff admits that he does not know whether anyone at Millennium was aware of the questions he might have been asked at the deposition, but he avers that Millennium's prior experience with

8

litigation, the fact that Millennium instituted the Colorado lawsuit, and the fact that Millennium had requested its staff to inform Millennium of any violations by Rocky Mountain indicate that Millennium was not completely ignorant of what plaintiff would potentially be asked in the deposition. Plaintiff admits that he does not have any evidence that Price played any role in the decision to end his employment at Millennium. *Id.* Plaintiff further admits that at the time Smith decided to terminate him, Smith was not aware that plaintiff had received a subpoena to testify in the Colorado lawsuit. The Colorado lawsuit was resolved and dismissed before plaintiff's deposition was taken. plaintiff has no knowledge regarding the reason for, or any terms of, the resolution and settlement of the Colorado lawsuit. *Id.*

Plaintiff states that prior to his termination, his sales were ranked tenth out of 125 overall for the Company. In addition, plaintiff states he worked to build sales in his territory from 600 units to 4,000 units during his time working for defendant. On the date he was terminated, plaintiff states he did not receive any sort of documentation from defendant regarding the cause for his termination, nor did he receive any documentation leading up to his termination about any potential reason for concern. Plaintiff requested documentation from defendant and received a letter stating that he was terminated because he was "not able to fulfill his duties in an acceptable manner." Plaintiff states that after his termination, Arnold was promoted to Senior Sales Specialist. Arnold was around 24 years old when he was hired by defendant and began working as plaintiff's CSS. When Arnold began his employment with Millennium, he started at a base salary

of $50,000. Once Arnold was promoted after plaintiff's termination, his base salary was increased to $65,000 and then to $85,000. Defendant also hired two employees, ages 28 and 29, after plaintiff's termination and Arnold's promotion, to serve as customer service representatives. These two new employees started at salaries of approximately $50,000 and $45,000. While plaintiff was employed with Millennium, his base salary was $89,000 [Doc. 51].

Defendant has moved for summary judgment on plaintiff's claims asserting that there exist no genuine issues of material fact supporting plaintiff's claims of whistleblower retaliation, termination in violation of public policy, and age discrimination. Specifically, defendant contends that plaintiff's whistleblower claims must be dismissed because his deposition testimony confirms that prior to his termination he never refused to engage in any illegal activity at Millennium, and never reported any illegal activity by Millennium. As to plaintiff's claim that he was discharged in order to prevent him from testifying in the Colorado lawsuit, such claim is contradicted by his deposition testimony that Millennium took no action to impede his deposition in that case. Defendant also asserts that plaintiff offers nothing but speculation to support his claim under the Tennessee Human Rights Act that he was terminated because of his age. Instead, defendant contends that plaintiff was terminated because his supervisor received multiple complaints from customers and co-workers about plaintiff's lack of professionalism and poor work performance [Doc. 31].

10

Plaintiff responds that genuine issues of material fact exist as to all of his claims and defendant's motion for summary judgment should be denied [Doc. 41].

## II.    Standard of Review

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.  Rule 56(a) sets forth the standard for summary judgment and provides in pertinent part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "a party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  The "mere possibility of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v.*

11

*Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Id.*

## III.     Analysis

### A.     Whistleblower Claims

Plaintiff asserts whistleblower claims under both the Tennessee Public Protection Act ("TPPA") and common law. Defendant argues that plaintiff cannot establish a whistleblower claim under either the statutory or common law cause of action. In his deposition testimony, plaintiff admits he never reported any alleged illegal activity when Millennium's customers asked the LSA's to provide services that were not directly related to drug testing services provided by Millennium. Defendant argues that plaintiff cannot present evidence that Millennium's decision to terminate him was caused, solely or substantially, by any protected activity as opposed to multiple customer complaints and performance concerns. Therefore, his whistleblower claims brought under the TPPA and common law must be dismissed as a matter of law.

12

Plaintiff responds that there is a genuine issue of fact as to whether he refused to participate in illegal activities. Plaintiff submits that as a Senior Sales Specialist, he was in charge of compliance for the LSA's working under him. He became aware of compliance violations sometime during or after his vacation in August 2011. LSA Norman, who called plaintiff during his vacation, was already terminated by Millennium by the time plaintiff returned to work. Once plaintiff learned of the problems with his LSA's upon his return to work, he confirmed the LSA's stories with Arnold. After confirming the LSA's stories with Arnold, he attempted to discuss the issues with Smith. Plaintiff states that Smith refused to engage in any discussion with him regarding the matter. These circumstances, plaintiff argues, create a fact issue as to whether he refused to participate in illegal activity by attempting to report violations to Smith once plaintiff became aware of the violations.

In order to establish a prima facie case under the TPPA, a plaintiff must demonstrate four elements: (1) plaintiff's status as an employee of defendant; (2) plaintiff's refusal to participate in, or to remain silent about, illegal activities; (3) the employer's discharge of the employee; and (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee. *Sacks v. Jones Printing Co. Inc.,* 2006 WL 686874 at *4 (E.D. Tenn. Mar. 16, 2006) (citing *Hill v. Perrigo of Tenn.,*, 2001 WL 694479 at *3 (Tenn. Ct. App. Jun. 31, 2001)). Under the TPPA, the plaintiff must demonstrate an "exclusive causal relationship" between his whistleblowing activity and

13

his subsequent discharge. That is, the plaintiff must show that he was terminated "solely because of his whistleblowing activity." *Sacks,* 2006 WL 686874 at *3.

In order to establish a prima facie case of common law retaliatory discharge, a plaintiff must demonstrate: (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or compliance with clear public policy. *Franklin v. Swift Transp. Co.,* 201 S.W.3d 521, 528 (Tenn. Ct. App. 2006) (citing *Crews v. Buckman Labs. Int'l Inc.,* 78 S.W.3d 852, 862 (Tenn. 2002)). The essential difference between the statutory cause of action for retaliatory discharge and the common law cause of action is that with the common law cause of action a plaintiff need only show that his activity was a substantial factor in effectuating his discharge rather than showing it was the sole reason for his discharge. *Guy v. Mutual of Omaha Ins. Co.,* 79 S.W.3d 528, 537 (Tenn. 2002).

If the plaintiff makes the necessary prima facie showing, the burden shifts to the employer to articulate a legitimate, non-pretextual reason for the discharge. *Yates v. Hertz Corp.,* 285 F. sup. 2d 1104, 1117 (M.D. Tenn. 2003). If the employer offers a legitimate reason for terminating the plaintiff, the burden then shifts back to the plaintiff to show that the reason given is pretextual or not worthy of belief. *Id.* at 1118.

14

"Essentially, causation does not exist if the employer's stated basis for the discharge is valid and non-pretextual." *Id.* In order to establish pretext, a plaintiff must demonstrate that (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate plaintiff's termination; or (3) the proffered reason was insufficient to motivate plaintiff's termination. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Here, plaintiff does not allege he was ever asked (and therefore could not have refused) to engaged in any illegal activity. Therefore the question is whether he was discharged because he reported (refused to remain silent about) any illegal actions by Millennium. When questioned on this very point, plaintiff testified at his deposition:

> Q.    During your employment with Millennium, you never suggested or reported any violation by Millennium of any of the CFR, Code of Federal Regulations, or the Federal Register entries for the rules and regs that deal with control of clinical laboratories, did you?
>
> A.    No, and I still have not to this day.

[Doc. 32-1]. The Tennessee Supreme Court recognizes that "the nature of the claim asserts that silence was broken." *Gossett v. Tractor supply Co. Inc.,* 320 S.W.3d 777, 788 (Tenn. 2010). Based on his own admission, plaintiff never broke the silence. The Tennessee Court of Appeals further describes the purpose of whistleblower causes of action as:

> The common law and statutory protection afforded to whistleblowers stems from the principle that an employee should not be placed in the dilemma of being forced to choose between reporting or participating in illegal activities and keeping a job. . . .

15

> Persons asserting either a statutory or common law whistleblowing claim must prove more than that their employer violated a law or regulation. They must prove that their efforts to bring to light an illegal or unsafe practice furthered an important policy interest, rather than simply their personal interest.

*Collins v. AmSouth Bank,* 241 S.W.3d 879, 884-85 (Tenn. Ct. App. 2007). Plaintiff's whistleblower claims are based upon his testimony that after returning from a vacation in August 2011, he attempted to inform Smith that two LSA's in his geographic region had reported to him that they were asked by customers, not Millennium, to file medical records, clean bathrooms, and pick up cigarette butts. In other words, the "illegal activity" plaintiff claims to have raised with Smith in this case consists of alleged requests by Millennium's customers, without Millennium's knowledge or consent, for two LSA's to provide services that would have been in violation of the law and Millennium's policies. Plaintiff admits that he never made any complaint or report to anyone within Millennium about the requests to the LSA's. Instead, plaintiff instructed Arnold that any further customer requests to an LSA should be addressed with the customer. When plaintiff mentioned the allegations to Smith, his supervisor was already aware of the situation and told plaintiff he had handled the LSA "incidents." Merely pointing out that third parties asked Millennium employees to perform illegal acts in violation of company policy does not allow plaintiff to be protected as a whistleblower. Persons asserting either a statutory or common law whistleblowing claim must prove more than that their employer violated a law or regulation. *Collins,* 241 S.W.3d at 885; *see also Williams v. Columbia Housing Auth.,* 2008 WL 4426880 at *5 (Tenn. Ct. App.

16

Sept. 30, 2008) ("More is needed than simply pointing to some violation of the law on the employer's part. The TPPA's protection extends to employees who have reasonable cause to believe a law, regulation or rule has been violated or will be violated and in good faith report it"). Here, plaintiff was not faced with the moral dilemma of being forced to choose between keeping his job or reporting illegal activities. Plaintiff does not allege that anyone at Millennium asked him to assist or permit LSA's to perform duties in violation of Millennium's policies and the law; therefore he could not have refused to engage in any such activity.

Moreover, to be actionable, a state law retaliation claim based upon a refusal to remain silent about illegal activities requires that plaintiff complain to someone other than the employer that is allegedly in violation of the law. *See e.g., Lawson v. Adams*, 338 S.W.3d 486, 497 (Tenn. Ct. App. 2010) (plaintiff required to establish that he made a report to some entity other than former employer regarding former employer's alleged illegal activities). Plaintiff must show that he actually reported the alleged wrongdoing to someone other than his employer. The Court finds that plaintiff fails on this point, because he has not identified any person or entity to which he complained. Plaintiff did not report the alleged illegal activity to the Millennium compliance officer. Nowhere does the record reflect that plaintiff made any attempt to report alleged illegal activities to outside officials or regulators. Plaintiff admitted that he did not report his complaints to any federal or state agencies. *See e.g., Riddle v. First Tennessee Bank*, 2011 WL 4348298 at *11 (M.D. Tenn. 2011) ("an employee must make a report to some entity

17

other than the person or persons who are engaging in the allegedly illegal activities"). Because he did not refuse to participate in illegal activity and never actually reported any illegal activity, he does not qualify for protection as a whistleblower under the TPPA or the common law.

Nevertheless, even if it is assumed for the purposes of argument that plaintiff has stated a prima facie case of retaliation under the TPPA, defendant has articulated a legitimate non-discriminatory reason for his termination. Smith testified that he decided to terminate plaintiff based on the multiple complaints he had received from customers and co-workers as well as plaintiff's dishonesty during their discussion about the missed customer visit. Plaintiff must demonstrate then by a preponderance of evidence that the stated reasons were a pretext for retaliation.

To raise a genuine dispute of material fact as to pretext and defeat summary judgment, plaintiff must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Millennium's action, or (3) the proffered reason was insufficient to motivate the action. *Cicero v. Borg-Warner Auto Inc.,* 280 F.3d 579, 589 (6th Cir. 2002).

There is certainly a factual basis for the action taken by Millennium. Smith was informed by Arnold and other co-workers that plaintiff showed poor organizational skills, failed to appear for appointments on time, got lost on his way to meetings with customer accounts, and failed to complete paperwork and expense reports in a timely manner. In addition, Smith had received emails from Millennium customers complaining that

18

plaintiff lacked product knowledge, stayed in the customer's office too long "chatting," and caused other administrative difficulties. One email from a customer requested that Arnold service the account instead of plaintiff because plaintiff was over an hour and a half late for a meeting and showed a lack of professionalism. When Smith spoke to plaintiff about the missed appointment, Smith felt that plaintiff was less than honest in his explanation. Thus, there is no doubt that the proffered reasons for plaintiff's termination have a basis in fact.

Plaintiff has not shown that the proffered reasons were insufficient to motivate dismissal. Smith testified that customer service is a fundamental requirement of the Senior Sales Specialist. Smith received multiple complaints from customers and other employees about plaintiff's poor job performance. Moreover, Smith felt that plaintiff had been dishonest during their discussion about the missed customer visit. Plaintiff has no evidence that Smith had reason to disbelieve or question the accuracy of those complaints, or to have suspected that any information provided by Arnold was based on Arnold's desire to take plaintiff's job. *See Anderson V. Stauffer Chem. Co.,* 965 F.2d 397, 402 (7th Cir. 1992) ("The problem with [the plaintiff's] theory is that he has failed to produce any factual evidence indicating that the complaints against him were fabricated or unfounded. . . so long as [the decisionmaker] honestly believed that [plaintiff] had problems with dealers and sales representatives that he was doing nothing to correct, the termination was certainly justified"). Plaintiff has not shown how such conduct on his part is insufficient to motivate termination based on company policies.

Plaintiff is left with showing that the proffered reasons did not actually motivate his dismissal in order to establish pretext. In an effort to show pretext, plaintiff argues that prior to his termination, his sales were ranked tenth out of 125 overall for the Company. Further, he worked to build sales from 600 units to 4,000 units in his territory during his time working for defendant. As evidence of pretext, plaintiff states that on the date he was terminated, he did not receive any sort of documentation from Millennium regarding the cause for his termination, nor did he receive any documentation leading up to his termination about any possible reason for concern. Plaintiff did eventually receive a letter from Millennium stating that he was terminated because he was "not able to fulfill his duties in an acceptable manner." Finally, plaintiff asserts the temporal proximity between his attempt to discuss LSA compliance with Smith and his subsequent termination creates an inference of retaliation.

First, the Court finds that simply because plaintiff had a high level of sales, this fact alone does not prevent an employer from requiring other standards of performance. *See Cosby v. Hoffman-La Roche Inc.,* 2011 WL 6752426 at *6 (S.D. Ohio Dec. 22, 2011) ("While high sales may indicate that one aspect of an employee's work is superior, high sales numbers do not necessarily connect to overall satisfactory performance"). An employer may insist upon non-discriminatory performance standards. The fact that an employee has high sales, but is sanctioned for violating other performance standards of an employer, does not establish pretext. *Id.* The same reasoning applies here, and plaintiff's sales results did not overcome his other performance deficiencies. It is

20

undisputed that Smith had recommended termination of other Sales Specialists for performance reasons, and plaintiff has presented no evidence of any Sales Specialist who engaged in similar conduct but was not terminated.

Second, plaintiff argues that Millennium was not justified in terminating him because he did not receive any documentation regarding the reason for his termination and did not receive warnings that there were concerns about his job performance. Plaintiff points to nothing in Millennium's policies requiring it to provide prior written notice before termination. In *Gantt v. Wilson Sporting Goods Co.,* the Sixth Circuit found the fact that plaintiff "had a good work record and had not been warned that she was about to be terminated was not evidence of pretext." *Id.* 143 F.3d 1042, 1049 (6th Cir. 1998). The same rule applies here. The complaints from customers and co-workers, as well as his supervisor' belief that plaintiff had lied to him, were sufficient to constitute grounds for immediate termination, and not evidence of pretext.

Third, plaintiff states that the "temporal proximity" between his attempt to discuss LSA compliance with Smith and his subsequent termination creates an inference of retaliation. However, the Sixth Circuit has held that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 317 (6th Cir. 2001). Plaintiff relies on his own conclusory testimony that he was discharged for refusing to participate in illegal activity and not because of his performance. Plaintiff has presented no evidence that his conversation with Smith about

the requests that Millennium's customers had made to the LSA's had anything to do with his termination, much less that it was the sole cause or even a substantial cause of his discharge. "Evidence of causation requires more than the facts showing employment, the exercise of rights, and a subsequent discharge. It requires direct evidence or compelling circumstantial evidence." *Jones v. Agri-Laboratories Ltd.,* 2010 WL 4806813 at *5 (M.D. Tenn. Nov. 18, 2010). The plaintiff's "mere belief or understanding of why he was dismissed, is not sufficient to create a genuine issue of material fact." *Id.*

Here, plaintiff cannot dispute that the emails and reports from customers and co-workers set forth legitimate concerns about his performance and ability to service his customers. Those reports were made before plaintiff went on vacation and before receiving the calls from the LSA's about the requests from customers. Smith's confirmation that plaintiff was dishonest about the time he arrived at a customer account was the last straw. It was those complaints and plaintiff's dishonesty that were the reasons for his termination and plaintiff offers nothing but speculation as evidence to the contrary. "Rather, a plaintiff must prevent evidence that is sufficiently compelling to support an inference of retaliation." *Cooper v. Wyndham Vacation Resorts Inc.,* 570 F. Supp. 2d 981, 986 (M.D. Tenn. 2008). Plaintiff has failed to demonstrate that Millennium's proffered reasons for terminating him were a pretext for retaliation. Therefore, summary judgment on his whistleblower claims under the TPPA and Tennessee common law is appropriate.

## B. Colorado Lawsuit

Plaintiff also contends he was terminated in violation of Tennessee public policy because of his willingness to cooperate and appear as a witness in a deposition in the Colorado lawsuit. Plaintiff argues that defendant did not want him to testify to anything potentially damaging to defendant, so Millennium terminated him. The Court finds this argument without merit. The record shows that neither plaintiff nor Millennium had any knowledge of what he would have testified about at the deposition. Plaintiff has no evidence that Millennium took any action to impede or prevent him from testifying in his deposition. He does not claim that anyone at Millennium instructed him not to testify. Instead, the record shows that Millennium notified Forensic that plaintiff was no longer with the company and his deposition would need to be procured through the issuance of a subpoena. After plaintiff was served with a subpoena, Millennium's in-house counsel telephoned plaintiff and offered to answer any questions or to provide plaintiff with counsel for the deposition. Millennium could not have prevented or impeded a deposition that was noticed by an opposing party merely by terminating plaintiff's employment. If anything, Millennium would have had an incentive not to terminate plaintiff's employment so that plaintiff's testimony would have been given when he was still under Millennium's employment and control. There is no reasonable inference, much less factual support, that his termination had any connection to the deposition.

Moreover, plaintiff testified that he has no evidence that Millennium's in-house counsel played any role in the decision to terminate his employment with Millennium.

23

Smith, plaintiff's supervisor, testified that he was not aware that plaintiff had received a subpoena to testify in the Colorado lawsuit at the time he recommended plaintiff's termination, and denied that anyone at Millennium who had knowledge of the Colorado lawsuit played any role in plaintiff's termination. The plaintiff in a retaliation lawsuit is required to show that the decisionmaker, the individual who took the adverse job action against the plaintiff, had knowledge of the plaintiff's protected activity at the time of the adverse job action. In the absence of such proof, the plaintiff's claim of retaliation fails. *See Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998). Moreover, plaintiff's mere "belief or understanding" of why he was discharged, is not sufficient to create a genuine issue of material fact. *Provonsha v. Students Taking a Right Stand, Inc.*, 2007 WL 4232918 at *4 (Tenn. Ct. App. Dec. 3, 2007). Therefore, summary judgment on plaintiff's public policy claim is appropriate.

### C.    Age Discrimination Claim

Plaintiff's third claim is for age discrimination under the Tennessee Human Rights Act ("THRA"). Defendant asserts that plaintiff's age discrimination claim fails because he has no evidence that Millennium would not have fired him if he was under forty, especially considering plaintiff was over forty at the time he was hired. Defendant states that Smith never made any derogatory comments to plaintiff about his age, and Smith testified that he had terminated employees who were both under and over forty because of performance issues. Smith further testified that he was unaware of plaintiff's age at the time he made the decision to terminate him.

24

In support of his claim of age discrimination, plaintiff argues that Smith favored a younger employee (Arnold) over plaintiff, and states that this favoritism was due to the age difference between plaintiff and Arnold. Plaintiff also argues that because Smith participated in hiring him, Smith had to be aware of plaintiff's age. Plaintiff also points to the fact that Millennium hired two employees (ages 28 and 29) after his termination as further evidence of age discrimination. Plaintiff argues that "age equals experience" and Millennium saved a lot of money when it replaced him with Arnold.

Plaintiff's age discrimination claim is brought pursuant to the THRA, a comprehensive anti-discrimination law which is intended to further the policies embodied in the similar federal laws against employment discrimination. *Johnson v. Collins & Aikman Auto. Interiors Inc.,* 2004 WL 1854171 at *3 (E.D. Tenn. Feb. 26, 2004). The statute provides in relevant part that is a discriminatory practice for an employer to "fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. §4-21-401(a)(1).

The stated purpose of the THRA is to "provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and the Age Discrimination in Employment Act of 1967 (ADEA)." Tenn. Code Ann. § 4-21-101(a)(1). Thus, courts "apply the same analysis to age discrimination claims brought under the THRA as those brought under the ADEA." *Bender v. Hecht's Dept. Stores,*

455 F.3d 612, 620 (6th Cir. 2006). Therefore, under both the THRA and the ADEA, a plaintiff must prove by a preponderance of the evidence that age was the "but for" cause of the challenged employer decision. *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 178 (2009).

In order to establish a prima facie case of age discrimination, the plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was discharged, (3) he was qualified for the position, and (4) he was replaced by a younger person. *Simpson v. Midland-Ross Corp.,* 823 F.2d 937, 940-41 (6th Cir. 1987). The plaintiff has the ultimate burden of proving intentional discrimination. *Id.* at 942. The plaintiff must produce evidence that age was a factor in the employer's decision to discharge the plaintiff and that but for this factor, the plaintiff would not have been discharged. *Phelps v. Yale Security Inc.,* 986 F.2d 1020, 1023 (6th Cir. 1993). If the plaintiff succeeds in demonstrating a prima facie case of age discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Harris v. Metro Gov't of Nashville and Davidson Co. Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010). Once the defendant provides a legitimate nondiscriminatory reason for its action, the burden again shifts to the plaintiff to establish that the defendant's "proffered reason was a mere pretext for intentional age discrimination." *Id.* Ultimately, the plaintiff bears the burden of proving that age was the "but for" reason for the defendant's adverse employment action. *Gross,* 557 U.S. at 178. "Mere conclusory allegations do not suffice to prove intentional discrimination based on age." *Simpson*, 823 F.2d at 941.

Here, plaintiff is able to show that he was a member of the protected class (over age 40), he was discharged by Millennium, he was qualified for the position when hired, and he was replaced by a younger person (Arnold). The burden of production now shifts to the defendant to establish a legitimate business justification for plaintiff's discharge. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).

As stated previously, Millennium discharged plaintiff for unsatisfactory job performance. The Court finds no genuine issue of material fact insofar as defendant has produced a legitimate business justification for its decision to terminate plaintiff. Now, the burden of production shifts to plaintiff who must establish a genuine issue of material fact as to whether Millennium's proffered reasons were merely a pretext for age discrimination. Plaintiff offers several arguments in support of his claim that defendant's proffered reasons for his termination were pretextual. The Court finds plaintiff's arguments without merit.

First, plaintiff's claim that Smith showed favoritism to Arnold is insufficient to establish that plaintiff was terminated because of his age. Federal courts hold that allegations of employment discrimination based on relationships or favoritism cannot sustain an age discrimination claim. *See Queen v. Wal-Mart Stores East L.P.,* 2012 WL 3101687 (N.D. Ga. Jul. 30, 2012); *Platner v. Cash & Thomas Contrs. Inc.,* 908 F.2d 902, 905 (11th Cir. 1990).

Second, plaintiff has not offered any evidence to dispute Smith's sworn statement that he was unaware of plaintiff's age at any time during his employment. Plaintiff's

27

reference to his date of birth on the New Hire Information Sheet is irrelevant without any evidence that Smith actually reviewed the sheet. The only evidence in the record is Smith's testimony that he was not aware of plaintiff's age at the time he made the decision to terminate him. Moreover, "where the same person hires the employee and fires him within a short period of time, especially where the employee's class has not changed, there is a strong contrary inference of discriminatory intent." *Stockman v. Oakcrest Dental Ctr. P.C.,* 480 F.3d 791, 801 (6th Cir. 2007). That is the case here. Plaintiff was hired by Smith in September 2010, and at the time he was hired, plaintiff was over 40 years old. Smith decided to terminate plaintiff in August 2011 for poor job performance. Therefore, because the same person hired plaintiff when he was over 40 years old and made the decision to terminate him approximately one year later, defendant is entitled to the contrary inference of discriminatory intent.

Third, plaintiff's argument that Millennium wanted to replace him with younger employees at a lower salary as evidence of age bias is without merit. Courts, including the Sixth Circuit, have rejected plaintiff's argument that "age equals experience" and that the desire to save money on salary costs is a proxy for age discrimination. *See Jenkins v. Holloway Sportswear Inc.,* 1993 WL 503736 at*5 (6th Cir. Dec. 8, 1993) ("Without more, [plaintiffs] replacement by a younger person with a lower salary does not support his claim of age discrimination"); *see also Bay v. Times Mirror Magazines Inc.,* 936 F.2d 112, 117 (2d Cir. 1991) (Employers decisions based solely on financial considerations are not barred by the ADEA).

28

It is plaintiff's burden to produce evidence that "but for" his age he would not have been terminated. He has failed to produce evidence on which a jury could reasonably find that defendant discharged him based on his age and not for performance reasons. Similarly, plaintiff is unable to show that defendant's proffered reasons for terminating him were pretextual. Therefore, summary judgment on plaintiff's public policy claim is appropriate.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** defendant Millennium Laboratories' motion for summary judgment [Doc. 31] and this case is **DISMISSED.**

ENTER:


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE