NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0825n.06

No. 14-5132

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JOSHUA HUGO, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| MILLENNIUM LABORATORIES, INC., | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) |

**FILED**
Oct 31, 2014
DEBORAH S. HUNT, Clerk

BEFORE:   BOGGS, SUTTON and STRANCH, Circuit Judges.

BOGGS, Circuit Judge.  Plaintiff-Appellant Joshua Hugo appeals from the district court's grant of summary judgment to his former employer on his claims of retaliatory discharge under the Tennessee Public Protection Act (TPPA) and Tennessee common law.  The district court granted summary judgment to Hugo's employer, Millennium Laboratories, Inc. (Millennium), after determining that Hugo did not engage in protected activity for purposes of the TPPA or common law.  The court also determined that Millennium articulated legitimate, non-pretextual reasons for Hugo's termination.  Because the record does not provide sufficient evidence that Hugo was terminated because of protected activity, Hugo is unable to demonstrate a genuine dispute with regard to the required causation elements of his TPPA and common-law claims. We therefore affirm the decision of the district court.

I

Defendant-Appellee Millennium is a health-services company that provides medical monitoring, pharmacogenetic testing, advanced analytics, and other services to healthcare professionals. In September 2010, Hugo was hired by Millennium as a Senior Sales Specialist responsible for managing existing customer accounts and developing new accounts in his assigned territory. In his role as a Senior Sales Specialist, Hugo reported to Regional Sales Manager Jarett Smith, and was supported by Brian Arnold, a Customer Support Specialist (CSS). Hugo also had direct supervisory authority over several Laboratory Service Assistants (LSAs), who are Millennium employees assigned to work at customer locations to assist with laboratory testing services. As recognized in state and federal anti-kickback laws, provision of services by LSAs that do not relate to laboratory testing can raise issues of illegal inducement. Thus, Millennium's policies prohibit LSAs from performing tasks unrelated to laboratory services and require all customers provided with an LSA to sign an agreement acknowledging the proper scope of an LSA's duties. As a Senior Sales Specialist, Hugo was responsible for monitoring the compliance of LSAs in his territory with Millennium's policies.

While on a vacation in August 2011, Hugo received a phone call from an LSA under his supervision who said that he had been asked by a customer to perform tasks, such as cleaning bathrooms and picking up cigarette butts, that were in violation of Millennium's policies. Days later, a second LSA contacted Hugo and stated that she had been asked by a customer to file medical records, which also would have violated Millennium's policies. After returning from vacation, Hugo discussed the matter with his CSS, Arnold, and mentioned to his supervisor, Smith, that he heard about one of the LSA's complaints. After Hugo was later discharged from Millennium, he received a call from another LSA who said that he was asked by a customer to

file medical records and allegedly had been told by Arnold to "just do whatever [the customers] want you to, but when [Hugo] comes by, follow the rules."

Separately, during the course of Hugo's employment, his boss, Smith, received several complaints from customers and Millennium employees regarding Hugo's job performance, including issues with his work habits, professionalism, timeliness, and customer service. When Smith and Hugo met in August 2011 to discuss one particular incident involving a customer account, Smith believed that Hugo lied in his explanation of events.[1] On August 25, 2011, Smith made the decision to recommend Hugo's termination, citing the multiple complaints regarding Hugo's job performance, as well as his alleged dishonesty. Hugo was terminated on September 2, 2011. He did not receive advance warning or documentation from Millennium regarding the cause for his termination.

On February 24, 2012, Hugo filed a complaint against Millennium in the Circuit Court for Knox County, Tennessee, in which he raised age-discrimination, public-policy, and retaliatory-discharge claims. In his retaliation claims, Hugo asserted that he was discharged for refusing to participate in the improper conduct involving the LSAs described above. Pursuant to 28 U.S.C. § 1441 and § 1332, Millennium removed the case on the basis of diversity of citizenship to the United States District Court for the Eastern District of Tennessee. On January 6, 2014, the district court granted Millennium's motion for summary judgment in full and dismissed the case. Hugo timely appealed from that decision, raising only his retaliatory-discharge claims on appeal.[2]

---

[1] Hugo denies lying to Smith in this meeting.

[2] Hugo chose to abandon his other claims.

-3-

II

We review a district court's grant of summary judgment de novo. *Singleton v. Select Specialty Hosp.-Lexington, Inc.*, 391 F. App'x 395, 399 (6th Cir. 2010). Summary judgment is proper if the "materials in the record" "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c), (a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In considering the motion, we view the inferences drawn from the underlying facts in the light most favorable to the non-moving party—in this case, the plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Moreover, it is relevant in this context that "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [ ] discrimination." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (quotations omitted) (alterations in original).

III

A

Hugo asserted claims of retaliatory discharge under both the TPPA and the common law. The TPPA, also known as the Whistleblower Act, provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). In order to establish a prima facie case under the TPPA, a plaintiff must demonstrate four elements: (1) he "was an employee of

the defendant"; (2) he "refused to participate in or remain silent about illegal activity"; (3) the employer discharged him or terminated his employment; and (4) the defendant discharged him "*solely* for . . . [his] refusal to participate in or remain silent about the illegal activity." *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 27 (Tenn. 2011) (emphasis added). Under common law, a plaintiff must demonstrate: "(1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a *substantial factor* in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (emphasis added).[3]

The key distinction between the TPPA and common-law claims concerns the causation requirement: Under the TPPA, a plaintiff must demonstrate that his protected activity—here, the refusal to participate in illegal activities—"was the *sole* reason for his termination," rather than only a "substantial factor" as is required under common law. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

If a plaintiff is able to make a prima facie showing of retaliatory discharge, the burden shifts to the employer to articulate a legitimate, non-pretextual reason for termination. *See* Tenn. Code Ann. § 50-1-304(g). If a legitimate reason is articulated, "the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's

---

[3] The Tennessee Supreme Court has stressed that "the exception to the employment-at-will doctrine" represented by this cause of action "must be narrowly applied and not be permitted to consume the general rule . . . that employers need freedom to make their own business judgments without interference from the courts." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 & n.3 (Tenn. 1997).

discharge and that the stated reason was a pretext for unlawful retaliation." *Id.* "To meet this burden, plaintiff must show by admissible evidence either (1) that the proffered reason[s] ha[ve] no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate the discharge." *Provonsha v. Students Taking a Right Stand, Inc.*, 2007 WL 4232918, at *4 (Tenn. Ct. App. Dec. 3, 2007) (internal quotations and citation omitted).

B

Hugo claims that he was terminated by Millennium "solely for refusing to participate in improper and/or illegal business activities" involving the LSAs. He asserts that he "simply did not want to be a player" in Millennium's alleged game, and was fired because of this refusal "to play ball." Even after drawing all inferences in his favor, the record fails to establish that Hugo was "terminated solely for refusing to participate in . . . illegal activities," Tenn. Code Ann. § 50-1-304(b), nor does it show that Hugo's "exercise of protected rights or compliance with clear public policy" was "a substantial factor in [Millennium's] decision to discharge" him. *Crews*, 78 S.W.3d at 862. Hugo points to no facts suggesting that his alleged refusal to participate in illegal activities was even considered by Millennium in making its decision to terminate him, let alone that it served as a motivating factor to the extent required under the TPPA and common law. In this context, "[t]he subjective interpretation by the employee of the actions of the employer will not create an issue of fact to defeat summary judgment." *Riddle v. First Tennessee Bank, Nat. Ass'n*, 497 F. App'x 588, 599 (6th Cir. 2012) (quoting *Hill v. Perrigo of Tennessee*, 2001 WL 694479, at *7 (Tenn. Ct. App. June 21, 2001)). Thus, Hugo's mere speculation that Millennium "did not want [him] around" to interfere with the alleged illegal activities is insufficient to establish the causation elements of either the TPPA or common-law claims.

Hugo failed to depose Smith, who was the individual responsible for Millennium's initial termination decision. Thus, the only facts before us regarding the relevant decisional process are those offered by Millennium, which detail the various complaints raised by customers and co-workers regarding Hugo's job performance and include a sworn declaration by Smith asserting that he made the decision to terminate Hugo based on the multiple complaints Smith had received from customers and other employees as well as Hugo's alleged dishonesty. Hugo makes no effort to dispute the veracity of this evidence, claiming only that "it is hard to imagine" that the complaints "actually motivated [his] immediate dismissal" in light of his positive sales numbers and the lack of any warnings regarding his performance. As this court has previously stressed, however, it is not enough to merely "cast doubt" on the employer's reasons for termination without presenting "evidence establishing a causal connection" between the employee's termination and protected activity. *Mehr v. Starwood Hotels & Resorts Worldwide, Inc.*, 72 F. App'x 276, 284 (6th Cir. 2003). Such evidence is entirely lacking here. Rather, "[t]he undisputed evidence in the record establishes valid and legitimate reasons" for Hugo's termination, *Todd v. Shelby Cnty.*, 407 S.W.3d 212, 226 (Tenn. Ct. App. 2012), and there is no basis to conclude that Hugo was fired because of any refusal to participate in illegal activities. Therefore, summary judgment is appropriate. *See ibid.* (affirming summary judgment where employee failed to "produce[] or identif[y] sufficient evidence to show an issue of material fact on . . . causation"); *see also Riddle*, 497 F. App'x at 598-99 (affirming summary judgment where plaintiff "failed to meet his burden of demonstrating causation under the common law and the TPPA"); *Hill*, 2001 WL 694479, at *7 (no genuine issue of material fact where there "is nothing more than employee's conclusory allegations" regarding causation).

Even if Hugo were able to make out a prima facie case of retaliation under the TPPA or common law, Millennium "would still be entitled to summary judgment because it had a legitimate, non-retaliatory reason for terminating" him, and because Hugo "cannot point to any evidence suggesting that [Millennium's] explanation for his discharge" was pretextual. *Riddle*, 497 F. App'x at 598-99. To show pretext, Hugo must establish that Millennium's stated reasons had no factual basis, did not actually motivate Millennium's decision to terminate him, or were insufficient to support Millennium's decision. *See Provonsha*, 2007 WL 4232918, at *4. As noted above, Hugo does not dispute the factual basis of the several complaints raised by Millennium's customers and employees regarding Hugo's job performance, and he cannot point to any evidence showing that these complaints were not relied upon by Millennium in deciding to terminate him. Nor can Hugo demonstrate that Millennium's justification was insufficient given the content and nature of the complaints regarding his job performance, and especially considering Hugo's role as a sales specialist responsible for managing customer accounts. *Cf. Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 402 (7th Cir. 1992). In light of the evidence offered by Millennium, Hugo's positive sales record and Millennium's failure to provide a warning or documentation regarding the cause of Hugo's termination are not sufficient to establish pretext in this case. *See, e.g.*, *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1049 (6th Cir. 1998) (employee's good work record and lack of warning that she was about to be terminated did not establish pretext); *Cosby v. Hoffman-La Roche, Inc.*, 2011 WL 6752426, at *6 (S.D. Ohio Dec. 22, 2011) ("[H]igh sales numbers do not necessarily connect to overall satisfactory performance," and do not necessarily undermine non-pretextual reasons for termination.).[4]

---

[4] Because we resolve the matter based solely on the causation issue, we do not reach the other

IV

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---

elements of Hugo's TPPA and common-law claims.

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: October 31, 2014

Mr. Robert E. Boston
Waller, Lansden, Dortch & Davis
511 Union Street
Suite 2700
Nashville, TN 37219

Mr. Arthur F. Knight III
Taylor & Knight
800 S. Gay Street
Suite 600
Knoxville, TN 37929

Mr. John J. Park
Waller, Lansden, Dortch & Davis
511 Union Street
Suite 2700
Nashville, TN 37219

Mr. Jonathan Swann Taylor
Taylor & Knight
800 S. Gay Street
Suite 600
Knoxville, TN 37929

Re:  Case No. 14-5132, *Joshua Hugo v. Millennium Laboratories, Inc*
     Originating Case No. : 3:12-cv-00167

Dear Sir or Madam,

    The Court issued the enclosed (Order/Opinion) today in this case.

                      Sincerely yours,

                      s/Benjamin P. Alexander
                      Case Manager
                      Direct Dial No. 513-564-7021

cc:  Ms. Debra Poplin

Enclosure

Mandate to issue